**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Oscar BERGAL,<br><br>*Petitioner*,<br><br>v.<br><br>Kenneth GENALO, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Markwayne MULLIN in his official capacity as Secretary of Homeland Security; Todd BLANCHE, in his official capacity as Attorney General.<br><br>*Respondents*. | **Case No.**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Earlier today, federal agents from Immigration & Customs Enforcement (ICE) shot Petitioner Oscar Bergal while his five-year old son sat in his car—and then arrested him. He is now hospitalized under ICE's custody. He is the latest person swept into an increasingly violent immigration enforcement dragnet. On information and belief, the agents arrested him without a valid warrant and without any consideration of his individual circumstances. Because this style of summary detention violates federal immigration law and the Fifth Amendment, Mr. Bergal brings this petition to challenge his detention and to secure his immediate release.

## PARTIES

1. Petitioner Oscar Bergal is a resident of New York. He was detained today.

2. Kenneth Genalo is named in his official capacity as the Acting Field Office Director of the New York Field Office for Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. The ICE New York Field Office is responsible for

detentions in the greater New York City area. In this capacity, Mr. Genalo is also responsible for the administration of immigration laws and the execution of detention and removal determinations and is a legal custodian of Petitioner. Respondent Genalo's address is New York ICE Field Office Director, 26 Federal Plaza, 7th Floor, New York, New York 10278.

3. Respondent Markwayne Mullin is named in his official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, he is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a legal custodian of the Petitioner. Respondent Mullin's address is U.S. Department of Homeland Security, 2707 Martin Luther King Jr Ave SE, Washington, District of Columbia 20528.

4. Respondent Todd Blanche is named in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. § 1103(g). He routinely transacts business in the Southern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, he is the custodian of Petitioner. Respondent Blanche's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

**JURISDICTION**

5. The federal district courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the lawfulness or constitutionality of their detention by ICE. *See, e.g., Demore v. Kim*,

538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Petitioner is currently detained by Respondents.

6. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 (habeas); 28 U.S.C. § 1331 (federal question); and Article I, § 9, cl. 2 of the United States Constitution. This Court has authority to grant declaratory and injunctive relief. 28 U.S.C. §§ 2201, 2202. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## VENUE

7. Venue is appropriate in this district as Petitioner is detained under ICE's custody in a hospital in Manhattan.

## SPECIFIC FACTS ABOUT PETITIONER

8. Petitioner Oscar Bergal is a 28-year old resident of New York City.

9. Amid reports of a new directive for ICE to increase its number of daily arrests,[1] widespread ICE enforcement activity was reported today in immigrant neighborhoods of the Bronx, New York.

10. Shortly after school let out, Mr. Bergal was driving in a vehicle in the Marble Hill neighborhood with his five-year-old son in the backseat when ICE agents approached, shot, and arrested him. Mr. Bergal was left injured and bleeding and is currently hospitalized.

---

[1] *See* Priscilla Alvarez *et al*, Exclusive: ICE agents told to ramp up daily immigration arrests despite GOP unease as midterms near, CNN, Oct. 8, 2026 available at https://www.cnn.com/2026/10/08/politics/ice-immigration-arrests.

11. The swift, violent arrest prompted public outcry.[2] Demonstrations quickly began in the area of the shooting and later outside the hospital where ICE agents have confined Mr. Bergal.

12. As of this filing, no notice to appear has been docketed with the immigration court so as to commence removal proceedings against Petitioner.

13. On information and belief, a notice to appear had not been issued or authorized for Petitioner prior to his arrest.

14. On information and belief, the ICE agents lacked a valid warrant for Mr. Bergal's arrest.

15. Mr. Bergal is currently in a hospital in Manhattan. He is surrounded and under the guard of ICE agents. He is unable to leave of his own accord, and his family has not been able to visit him.

## LEGAL FRAMEWORK

16. Congress has authorized civil detention of noncitizens in removal proceedings for specific, non-punitive purposes. *See Jennings v. Rodriguez*, 138 S.Ct. 830, 833 (2018); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). For individuals who are "arriving" in the U.S. or who are subject to expedited removal because they have been present under two years and meet certain other requirements, mandatory detention is authorized by 8 U.S.C. § 1225(b). For individuals who are in removal proceedings following entry without inspection and who are not subject to mandatory detention based on criminal history, detention is normally authorized by 8 U.S.C. § 1226(a). Individuals with a final order of removal may be subject to mandatory or discretionary detention pursuant to 8 U.S.C. § 1231(a).

[2] *See* Ed Shanahan, *ICE Agent Shoots and Wounds Man in New York City,* N.Y. Times, Oct. 8, 2026, https://www.nytimes.com/2026/10/08/nyregion/ice-shooting-nyc-bronx.html.

17. Detention serves only two legitimate purposes: mitigating flight risk and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020).

18. Begininning in mid-2025, Respondents began to detain noncitizens like Petitioner subject to a mandatory detention statute, 8 U.S.C. § 1225(b)(2), without any individualized analysis of their custody status. In the months that followed, hundreds if not thousands of courts in this district and others held that the mandatory detention of longtime U.S. residents under this reinterpretation of statutes was unlawful and unconstitutional. *See, e.g., Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 481 (S.D.N.Y. 2025); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (noting that habeas petitioners prevailed 350 cases where they challenged Respondents' reading of § 1225(b)(2)). In *Barbosa da Cunha v. Freden*, the Second Circuit followed suit and held that 1226(a) "plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." 175 F.4th 61, 73 (2d Cir. 2026).

19. On July 1, 2026, the Board of Immigration Appeals held in *Matter of Vizcaino Aybar* that the proper venue for an immigration detainee's request for an administration bond hearing is the immigration court with jurisdiction over his place of detention. 29 I&N Dec. 736, 738 (BIA 2026). This means that if an individual is detained in New York and transferred to a jurisdiction where the relevant circuit precedent has not rejected the Board's decision in *Matter of Yajure Hurtado*, the immigration court in that venue must subscribe to *Matter of Yajure Hurtado* and find that the person is subject to mandatory detention.

### A. Respondents continue to summarily detain individuals under 8 U.S.C. § 1226(a) simply because they lack immigration status.

20. Since the Second Circuit's decision in *Cunha*, Respondents have adapted their mass detention strategy by purporting to rely on 8 U.S.C. § 1226(a) to justify a person's detention. But this invocation of § 1226(a) is often in name only because, in practice, Respondents regularly rely on a person's lack of status or the absence of any pending applications for immigration relief to conclude, as a categorical matter, that the individual is a flight risk. In such cases, the process used by Respondents is the same as when they were unlawfully applying § 1225(b)(2): summary detention.

21. The governing rule for § 1226(a) is settled. Under § 1226(a), "ICE must make an individualized determination as to whether a noncitizen 'pose[s] a danger to property or persons,' or is unlikely 'to appear for any future proceeding.'" *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *4 (S.D.N.Y. Nov. 14, 2025); *J.T.G. v. Genalo,* No. 26 CIV. 4521 (AT), 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026). That determination must be "based on (1) whether the noncitizen is a 'danger to property or persons' and (2) whether the noncitizen is 'likely to appear for any future proceeding' before detaining him." *C.A.R. v. Genalo*, No. 26-CV-4275 (JPO), 2026 WL 1506417, at *2 (S.D.N.Y. May 29, 2026) (quoting 8 C.F.R. § 1236.1(c)(8)). "These procedural protections matter. They are not mere technicalities." *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025).

22. Courts have therefore rejected Respondents' claim that they relied on § 1226(a) where ICE's initial custody determination was "individualized" in name only—that is, where ICE substitutes categorical proxies for a determination tethered to a person's circumstances. Thus, "a *per se* determination of a risk of flight or danger to the community based on a noncitizen's undocumented status alone comports not with § 1226(a), but with the government's desired policy of mandatory detention." *J.T.G.*, 2026 WL 1724325, at *4 (cleaned up); *see also Pastrana-Beltran*

*v. Mullin*, No. 26-CV-2657 (RER), 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (ordering immediate release where ICE relied on manner of entry and unauthorized employment to deem petitioner a flight risk); *Inestroza Carbajal v. Frazier*, No. 26-CV-2778-SJB, 2026 WL 1309265, at *4 (E.D.N.Y. May 12, 2026) ("mere lack of status does not present a per se risk of flight").

**B. Separately, Respondents application of 8 U.S.C. § 1226(a) must comport with the Fifth Amendment's Due Process Clause.**

23. Separately, regardless of whether executed under § 1225(b)(2) or § 1226(a), Respondents' actions in *re-detaining* Petitioner—an individual whom they previously released and was therefore living at liberty—also violates the Fifth Amendment's Due Process Clause. *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025) ("The Government's discretionary authority to detain individuals for immigration purposes does not free it from the constraints of the Constitution.") (citing *Velasco Lopez*, 978 F.3d at 850)).

24. A person's liberty cannot be infringed upon without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690-91. The Second Circuit has held that the *Matthews v. Eldridge* balancing test is applicable to determine the adequacy of process in the context of civil immigration confinement. *Velasco Lopez*, 978 F.3d at 851 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). This test requires process sufficient to mitigate the risk of erroneous deprivation of a liberty interest. Numerous courts agree. *See*, *e.g.*, *Tejeda Mata v. Francis*, 26-CV-658 (KMK) (S.D.N.Y. Jan. 28, 2026) (ECF No. 6); *Lopez Benitez*, 795 F. Supp. 3d at 491-496; *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *5 (S.D.N.Y. Nov. 14, 2025); *Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737 at *4 (S.D.N.Y. June 18, 2025); *Padilla Molina v. Deleon*, No. 25-CV-06526 (JMA), 2025 WL 3718728, at *5 (E.D.N.Y. Dec. 23, 2025); *Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

25. The determination of what procedures are required under the Fifth Amendment requires consideration of: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Valdez,* 803 F.Supp.3d 213, 217 (citing *Mathews*, 424 U.S. at 335). In recent cases where Respondents have claimed adherence to 8 U.S.C. § 1226(a), Courts have pointed to the deficiencies in ICE's custody determination process, such as omissions or misstatements, to highlight the risk of erroneous deprivation under the second *Mathews* factor. *See, e.g., Curimilla Quille,* 2026 WL 1453889, at *5 ("ICE's inaccuracy is significant because it demonstrates not only a high risk of the erroneous deprivation of Petitioner's liberty interest, but also, the actual erroneous deprivation of that interest").

**WARRANTLESS DETENTIONS**

26. Since 2025, ICE officers in New York and around the country have routinely engaged in a campaign of detentions without administrative warrants, which result in the jailing of individuals like Petitioner without any individualized consideration of the necessity of detention as required under the statute. *See Garcia-Lanza v. Noem*, 26-cv-29, 2026 WL 585130 at *10 (E.D.N.Y. March 3, 2026) ("A groundswell of caselaw responding to the recent onslaught of immigration enforcement efforts document troubling practices, while facts elicited in similar, ongoing cases have provided further evidence that the problems identified in these pages may be widespread.")

27. These warrantless detentions violate 8 U.S.C. § 1357(a)(2), which restricts the circumstances under which ICE officers can arrest an individual without a warrant. That statute requires that officers have "reason to believe" a person is in the U.S. in violation of laws *and* "is

likely to escape before a warrant can be obtained for his arrest." That assessment must be individualized. In order to comport with the Fourth Amendment, it requires probable cause that each of the two criteria is met.

28. Alternatively, where a warrant is presented by Respondents, it is often invalid as a matter of law and fact. Indeed, ICE often attempts to mask the warrantless nature of these detentions through issuance of an ex-post-facto administrative warrant and Notice to Appear. *See, e.g., Lopez Romero v. Genalo*., No. 26 CIV. 6184 (AT), 2026 WL 2240720, at *2 (S.D.N.Y. Aug. 3, 2026) (noting that Respondents' own warrant showed it was issued *after* the arrest took place). Many courts have condemned this practice as unlawful. *See Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (finding reliance on an administrative warrant issued *prior* to a Notice to Appear it "had no authority to do so" and that alone "is a dispositive and independent basis to grant the writ"). Despite these condemnations, "the practice has continued unabated for months." *Parada Cruz v. Mullin*, No. 26-CV-1110-SJB, 2026 WL 1027441, at *5 (E.D.N.Y. Apr. 16, 2026); *see also Alfaro v. Mullin*, No. 26-0766 (GRB), 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026) ("officers' testimony confirmed that this illegal practice has become standard procedure for ICE enforcement efforts in this district").

29. Under federal law, a warrant can only be issued *after* ICE places someone in removal proceedings. Accordingly, under 8 C.F.R. § 1236.1(b)(1), an administrative warrant must be authorized before a person's arrest and it must be preceded by a notice to appear (the document used to commence removal proceedings: "*At the time of issuance of the notice to appear*, or at any time thereafter and up to the time removal proceedings are completed, the [named individual] may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1) (emphasis added). Courts have explained that the "NTA [notice to appear] begins

the removal process, and at that time or after its issuance, the [g]overnment can then effectuate [an individual's] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-CV-5229 (SJB), 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021).

30. The absence of a lawful administrative warrant invalidates a person's detention under § 1226(a). *Lopez Romero v. Genalo*, 2026 WL 2240720, at *2. The reason is that § 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General ... may continue to detain the arrested alien [or] may release the alien on ... bond of at least $1,500 ... [or] conditional parole." *Id.* Thus, as the statute makes plain, Section 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the [noncitizen's] arrest." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (quoting 8 U.S.C. § 1226(a).

31. Against this backdrop, courts have held that a "[Form] I-200 [Warrant] cannot be used to effectuate an arrest *before* an NTA has been issued." *Yeleshev v. Larocco*, No. 26-CV-2294 (SJB), 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (emphasis in original and collecting cases). Indeed, "if a Form I-200 Warrant is without effect, it cannot serve as the predicate 'warrant issued by the Attorney General' necessary to justify arrest and detention under Section 1226(a)." *Okeke v. Maldonado*, No. 26-CV-2714 (PKC), 2026 WL 2056904, at *4 (E.D.N.Y. July 16, 2026). Accordingly, courts have granted the writ and ordered release where an invalid warrant led to a noncitizen's arrest, because "it could not have triggered Respondents' detention authority under Section 1226(a)." *Id.* at 6-7 (collecting cases).

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

32. Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

33. Petitioner's detention violates both the substantive and procedural components of the Due Process Clause. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003).

34. Because "[i]n this country liberty is the norm and detention 'is the carefully limited exception,'" *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (*quoting United States v. Salerno*, 481 U.S. 739, 755 (1987)), a reasoned, individualized determination is essential to ensure that detention is not an unnecessary—and thus erroneous—deprivation. Petitioner was not accorded sufficient process prior to his sudden detention by ICE. On information and belief, he received neither notice nor an opportunity to be heard as to whether detention was warranted. *See Martinez*, 2026 WL 62019, at *3 (finding a due-process violation where the "Government offers no justification for why" petitioner, a longtime U.S. resident, "was detained without an initial determination as to eligibility and without a bond hearing"); *Cuy Comes*, 2025 WL 3206491, at *5 (ordering immediate release where "ICE summarily detained Cuy Comes without making an individualized determination as to his risk of flight or his danger to the community, let alone affording him notice or opportunity to be heard").

35. Moreover, Respondents violated his right to substantive due process by shooting him, seriously injuring him and also putting his young child in the backseat at risk of injury and death. Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience.'" *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 356 (S.D.N.Y. 2019) (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). P

36. Respondents' actions violate Petitioner's right to due process.

**COUNT TWO**
**VIOLATION OF THE FOURTH AMENDMENT;**
**8 U.S.C. § 1357; 8 U.S.C. § 1226(a)**

37. Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

38. "The Fourth Amendment applies to all seizures of the person." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Except at the border and its functional equivalents, the Fourth Amendment prohibits Respondents from conducting a detentive stop to question a person without reasonable suspicion that a person is a noncitizen unlawfully in the United States. *Id.* at 884. The Government bears the burden of providing "specific and articulable facts" to support reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). The race of an individual cannot itself create reasonable suspicion, even for a temporary stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 887 (1975); *Noem v. Vasquez Perdomo*, No. 25A169, --- S.Ct. ----, 2025 WL 2585637, at *3 (Sep. 8, 2025) (Kavanaugh, J., concurring). Officers lacked reasonable suspicion to approach and stop Petitioner.

39. A search or seizure requires probable cause to believe a noncitizen "is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357 (a)(2). "Though 8 U.S.C. § 1357(a)(2) uses the phrase 'reason to believe; as the

standard for executing warrantless civil immigration arrests, 'aliens in this country are sheltered by the Fourth Amendment in common with citizens,' and therefore, to avoid running afoul of the Fourth Amendment, this statutory phrase is 'considered the equivalent of probable cause.'" *Escobar Molina*, 2025 WL 3465518, at *13 (quoting *Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*, 445 F.2d 217, 222-23 (D.C. Cir. 1971)); *see also United States v. Rodriguez*, 532 F.2d 834, 838 (2d Cir. 1976) (recognizing that arrests under 8 U.S.C. § 1357(a)(2) require probable cause); *English v. Sava*, 571 F. Supp. 1029, 1034 (S.D.N.Y. 1983) (construing 8 U.S.C. § 1357(a)(2) to require probable cause). Officers lacked probable cause to seize Petitioner.

40. Respondents' actions violated 8 U.S.C. § 1357, the statute governing warrantless arrests. On information and belief, Respondents did not conduct the individualized analysis required under 8 U.S.C. § 1357 to determine if Petitioner posed a risk of flight.

41. Alternatively, if an administrative warrant did exist, it was invalid and thus could not authorize Petitioner's detention under 8 U.S.C. § 1226(a). On information and belief, no Notice to Appear has issued for Petitioner or if one has it was not until after Petitioner was detained. As a result, any administrative warrant issued either concurrent to or shortly after his detention is invalid and his detention lacked any authority—which is alone a sufficient basis to grant the writ. *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025).

42. For the foregoing reasons, Respondents' actions violated the Fourth Amendment, 8 U.S.C. § 1357, and 8 U.S.C. § 1226(a).

## COUNT THREE
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

43. Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

44. The Administrative Procedure Act prohibits agency action which is arbitrary and capricious; contrary to constitutional right; not authorized by statute; or taken "without observance of procedure required by law." 5 U.S.C. § 706(2). Agency action that exceeds statutory authority is *ultra vires.*

45. Respondents' acted contrary to law, in excess of authority, and without observance of procedure required by law when they arrested Petitioner pursuant to an invalid administrative warrant. Contrary to what is required by § 1226(a) and governing regulations, including 8 C.F.R. §1236.1(b)(1), Respondents executed Petitioner's arrest with a warrant that, on information and belief, was not preceded by a notice to appear or was actually issued after Petitioner's arrest.

46. Separately, ICE officers' authority to conduct warrantless arrests is prescribed in 8 U.S.C. 1357(a)(2). That statute requires that officers have "reason to believe" a person is in the U.S. in violation of laws *and* "is likely to escape before a warrant can be obtained for his arrest." That assessment must be individualized. On information and belief, no individualized assessment of flight risk was conducted for Petitioner.

47. Because 8 U.S.C. § 1226(a) authorizes detention "on a warrant," the absence of a lawful warrant renders such detention contrary to law and *ultra vires*.

48. Respondents' actions violate the APA.

## COUNT FOUR
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS IN DETENTION

49. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

50. Individuals in civil immigration detention are "afforded a right to be free from deliberate indifference to their serious medical needs." *Charles v. Orange Cty.*, 925 F.3d 73, 85–86 (2d Cir. 2019). This right is rooted in the constitutional guarantee of substantive due process, which extends

to immigrants regardless of their status, and incorporates Eighth Amendment standards that protect individuals in confinement. *Id.* at 85. To prevail in such a claim, a person must first show a serious medical need. *Id.* at 86. The Court "may consider a number of factors when determining if a condition is serious enough, including: 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Mills v. Fenger*, 216 F. App'x 7, 10 (2d Cir. 2006) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)). Second, the defendants must have acted indifferently, either because they knew that "failing to provide the complained of medical treatment would pose a substantial risk to his health or… *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles*, 925 F.3d at 87 (emphasis in original). This "does not require proof of a malicious or callous state of mind," *id.*, and "proof of intent is not required." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).

51. Respondents have shown deliberate indifference to Petitioner's serious medical needs by first shooting him, causing serious injury, and then maintaining him in custody during his hospitalization. On information and belief, Respondents intend to transport Mr. Bergal to an ICE detention facility imminently—with no opportunity for recovery or further treatment outside of detention.

52. Mr. Bergal's current constructive confinement and imminent transfer to an ICE detention facility violate his right to substantive due process.

## COUNT FIVE
## RELEASE PENDING ADJUDICATION

53. Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

54. Pursuant to *Mapp v. Reno*, this Court has the "inherent authority" to set bail pending the adjudication of a habeas petition when the petition has raised (1) substantial claims and (2) extraordinary circumstances that (3) "make the grant of bail necessary to make the habeas remedy effective." 241 F.3d 221, 226 (2d Cir. 2001). A grant of bail is particularly appropriate when the petitioner faces serious medical hardship in custody and where government action "practically shocks the conscience." *Kiadii v. Decker*, 423 F. Supp. 3d 18, 21 (S.D.N.Y. 2018).

55. Given the summary nature of Petitioner's detention, he presents substantial claims. And the circumstances of his arrest and detention, which has caused outcry, are extraordinary. He is now hospitalized due to his injuries. *Coronel v. Decker*, 449 F. Supp. 3d 274, 289 (S.D.N.Y. 2020) ("Severe health issues have been the prototypical but rare case of extraordinary circumstances that justify release pending adjudication of habeas.").

56. He requests immediate release pending adjudication of the instant petition.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;
2. Enjoin Petitioner's removal from the United States and the Southern or Eastern District of New York or the District of New Jersey pending adjudication of the instant petition;
3. Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;
4. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, 8 U.S.C. § 1226(a) or, alternatively, 8 U.S.C. § 1357(a)(2);

5. Grant a writ of habeas corpus ordering Respondents to immediately and unconditionally release Petitioner from custody, without GPS monitoring;
6. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and
7. Grant such further relief as this Court deems just and proper.

Dated: October 8, 2026

/s/ Harold A. Solis
Paige Austin
Harold A. Solis
Make the Road New York
301 Grove St.
Brooklyn, NY 11237
Tel. (718) 418-7690
Paige.Austin@maketheroadny.org
Harold.solis@maketheroadny.org